## Case No. 1,141.

BAYLISS et al. v. LAFAYETTE, M. & B. RY. CO. et al.

[9 Biss. 90;[1] 8 Reporter, 579; 11 Chi. Leg. News, 391; 25 Int. Rev. Rec. 280; 1 Month. Jur. 123; 4 Cin. Law Bul. 624.]

Circuit Court, D. Indiana. Aug. Term, 1879.

CORPORATIONS—COUNSEL TO RECEIVER — COMPENSATION OF—SURETIES ON APPEAL BOND.

1. A decree appointing a receiver for a railroad and giving priority to claims for "labor in operation of the road" will be held to include proper compensation for counsel to the receiver for services necessary to the successful management of the road.

2. Sureties on appeal bond will be protected by the court when they have acted in good faith.

[In equity. Bill by Abram B. Bayliss and others against the Layfayette, Muncie & Bloomington Railway Company and others. For prior proceedings in this litigation, see Case No. 1,140.]

Abram B. Bayliss filed a bill to foreclose, on the western division of the railroad, a mortgage of which he was the trustee. Afterwards Joseph Colwell filed a cross-bill to foreclose a mortgage of the eastern division of the railroad, of which he was trustee.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

The district judge appointed a receiver of the whole road, who operated it for a considerable time under the direction of the court. A decree of foreclosure was entered upon the original and cross-bill, and the road was sold, and the proceeds of the sale were paid into court; and thereupon various parties who had claims against the road applied to the court for their payment, out of the fund arising from the sale. The company was insolvent, and the road was sold for much less than the amount due on the mortgages. The various claims are referred to in the opinion of the court.

H. Crawford and McDonald & Butler, for claimants.

Templer & Gregory and Harrison, Hines & Miller, for defendants.

DRUMMOND, Circuit Judge. When the bill was filed asking for a receiver, the appointment was made by the court, subject to some conditions, one of which was that he should pay certain claims against the railroad. We have not the precise form of the order, but as I understand, it was substantially this: That he was to pay all claims existing on the pay-roll, for services rendered, and for labor and supplies subsequent to the first day of January, 1877. That being the condition upon which the receiver was placed in possession of the property, and the policy marked out by the court as a guide to all parties in interest, and it having remained as the order of the court without change, I must assume that it was, and is, still binding upon all parties. Therefore, I shall reject all claims that have been filed which go back of the first day of January, 1877, and hold that they cannot be paid, save upon a contingency which possibly may be found hereafter to occur, namely, the existence of funds in the hands of the receiver, arising from the operation of the road, after the payment of all claims allowed by the order appointing the receiver. If there shall be any surplus money in the hands of the receiver, after providing for all the claims allowed under this order, then it may be that the court would permit some of these claims to be paid. If we were to allow these claims, it would open a door to the presentation of a flood of claims as just as any now presented to the court. Take the claim of "the Bee Line" for ties. It is undoubtedly an equitable claim against the railroad, and ought to be paid, the only question being whether it should be paid out of funds belonging to the bondholders. I think, under the circumstances, it ought not to be—certainly not unless there should remain a surplus arising out of the income of the road, after providing for all the claims payable under the order of the court. So that all these claims will be rejected, as matters stand at present.

The claims for services rendered by counsel, are, perhaps, the most embarrassing among those presented for the consideration of the court, and involve questions of the greatest difficulty. I do not think it is possible for me to lay down any absolute rule upon the subject. I assume the order made by the court to be as stated, and proceed to dispose of the questions discussed.

It is objected that services rendered by counsel do not come within the term "labor." These services were not upon the pay-rolls, and must come within the meaning of the term "labor"—labor done subsequent to the 1st of January, 1877. It is, as I have said, rather difficult to lay down any absolute rule upon this subject, and I think I can only adopt this principle: that whatever may be said fairly to be work done in the operation of the road is comprehended by the word, "labor." It is not necessary that it should be manual, in the sense of an act done by a person who works with the spade, the pick, or the hoe. It is sufficient if it be labor, and this would fairly include all services performed by any employe of the company, for instance, in making out and keeping accounts, and in doing anything necessary in the operation of the road; and in that sense I think that the services rendered by counsel, not in all cases, but in many cases, may be said to come within the meaning of the term "labor."

They are partly physical and partly mental. Take the case of a bill being prepared for a railroad company. The drawing up of the bill consists as well of manual as of intellectual labor. It is a work of the hand as well as of the head, and, therefore, is of the same class of labor, in one sense, as that of the ordinary laborer who uses his hands with the hoe, or the axe. Of course there is something higher and more important than this last, but it constitutes one of the elements of the service. I think it may be said, therefore, to come within the term "labor," and if it shall be necessary for the operation of the road, then, I think, like a large class of services performed, as by an ordinary employe or clerk, it ought to be considered labor in running the road, and so entitled to compensation.

Now, to illustrate and apply it to one matter in hand, namely: the service that was performed by counsel in preventing the seizure of a portion of the road by force, as it was said. Undoubtedly that may be fairly considered as work performed in the operation of the road. It was to keep possession of the road, and to allow the company to operate it as much as any service or work done by brakemen, or engineers. If, for example, the company had not the power to operate the road, then it had ceased to perform the duty which devolved upon it under the law. I am not speaking of the various incidental and outside questions that undoubtedly arose in the case; but only of the matter as a fact which existed, and which the court must

consider as bearing on the services so performed by the counsel.

So I think that species of labor is fairly within the terms of the order of the court, but in saying this, I am not prepared to admit that all the services performed by counsel were necessarily within the meaning of such language. It may be that some of the services performed were not, and that is one of the reasons for requiring the counsel to specify the character of the service in order that I may distinctly understand, and make the application of this principle to the various services performed by them.

Take the case, for example, of the services performed by counsel in obtaining the right of way on land for depots and other purposes. That may also fairly come within this class of service. It is said that it is part of the construction of the road. That is true in one sense, but it may also be a part of the operation of the road. After a road has its roadbed made, its iron down, and has run cars over it, it is not a finished road. There are always more or less things to be done besides, in order to make the road complete, and to enable the company to operate it successfully; and it often is necessary to obtain additional facilities for the purpose, and additional ground; and where it comes within that description, I think it is also fairly within the meaning of the term, "labor in the operation of the road," and for which the counsel is entitled to compensation. And so with any similar service performed by counsel.

There may be, and perhaps there are, in this case, services performed which do not necessarily come within the description I have given, and where I would not be willing to allow the compensation to be paid as coming within the term, "labor in the operation of the road."

It may be said this is a nice distinction, but one, I think, it is indispensable we should make in a case of this kind, and we must, for the purpose of doing equity, give to some extent a liberal construction to the language the court used on this occasion; and, it seems to me, under this view of the case, the labor performed by counsel may be just as important, indeed more important, than the labor performed by the ordinary laborer, or by the brakeman, engineer or fireman.

As to the claim of Mr. Heath for the payment of any amount due which he may have paid on an appeal bond, executed as security; whenever he pays that amount, I shall direct the master to pay it to him. Whenever a party in legal proceedings has become security for a railroad, in good faith, I think the court ought to protect him.

This disposes of all the various questions presented to the court.